## KROLL *v.* KATZ.

1. APPEAL AND ERROR—JUDGMENT NON OBSTANTE VEREDICTO—EVIDENCE.

The facts are reviewed in the light most favorable to plaintiff on review of a trial court's order granting defendant's motion for judgment *non obstante veredicto.*

2. TRIAL—JUDGMENT NON OBSTANTE VEREDICTO—EVIDENCE—QUESTION FOR JURY.

A question is presented for the jury where such facts are presented that reasonable men could honestly reach a different conclusion when testing whether or not to grant a motion for judgment *non obstante veredicto.*

3. NEGLIGENCE—DANGEROUS CONDITION OF PREMISES—INVITEES.

One in possession of premises owes the duty to invitees to maintain the premises in a reasonably safe condition and of exercising due care to prevent and to obviate the existence of a situation, known or which should have been known, that might result in injury to an invitee.

4. SAME—INVITEES—SAFE CONDITION OF PREMISES.

One who expressly or by implication invites others to come upon his premises, whether for business or other purposes, has the duty to be reasonably sure that he is not inviting them into danger and must exercise ordinary care and prudence to render the premises reasonably safe for the visit.

5. SAME—CONSTRUCTIVE NOTICE OF CONDITION.

The rule as to the length of time that a given condition must obtain in order to charge one in possession of premises with liability to an invitee for resulting damages, by reason of con-

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 886.
[2] 30A Am Jur, Judgments § 300.
[3, 4] 38 Am Jur, Negligence § 96.
[5] 38 Am Jur, Negligence §§ 97, 333.
[6–8, 10] 38 Am Jur, Negligence § 97.
[9] 38 Am Jur, Negligence §§ 184, 186.

structive notice of the condition, varies with the facts and circumstances involved and with the basis for the liability claimed and, generally, the issue of constructive notice is one of fact, not of law.

6. SAME—CONSTRUCTIVE NOTICE OF DANGEROUS CONDITION OF PREMISES.

Constructive notice of a defective condition of premises may arise not only from the passage of time itself, but also from the type of condition involved, or from a combination of the 2 elements involved in action by business invitee for injuries claimed to have arisen by virtue of a dangerous condition of the premises.

7. SAME—DANGEROUS CONDITION OF PREMISES—NATURE OF DEFECT—DURATION OF EXISTENCE.

The mere existence of a defect or danger in a premises is not enough to establish liability for injuries resulting from its existence, unless. it is shown to be of such a character or of such duration that the trier of the facts may reasonably conclude that due care would have discovered it.

8. SAME—DANGEROUS CONDITION OF PREMISES—INVITEES.

The possessor of premises has the duty to take reasonable care to know the actual condition of the premises upon which he extends an invitation to a business invitee and, in the exercise of reasonable care, either remedy the situation, or warn the invitee of the existence of a dangerous condition of the premises.

9. SAME—DEFECTIVE BASEMENT STAIRWAY—KNOWLEDGE OF DEFECT BY PLUMBER INVITEE—EVIDENCE.

Evidence presented in plumber's action against possessor of premises to which he was invited to make repairs for injuries sustained when he fell on defective and unlighted basement stairway *held,* insufficient to show that plaintiff had any knowledge, either actually or legally, of the defect previous to the incident, there being no rule imputing knowledge of the defect by plaintiff's employer to plaintiff.

10. SAME—DEFECTIVE BASEMENT STAIRWAY—KNOWLEDGE OF POSSESSOR OF PREMISES.

Evidence adduced and instructions given in action by plumber who had been invited to make repairs on premises in possession of defendant and was injured as he fell on defective stairs in unlighted basement *held,* to permit jury to find that defendant who had shortly theretofore visited the basement had discovered,

or, in the exercise of reasonable care, should have discovered the situation was dangerous and should have either remedied the danger or warned plaintiff of its existence, hence, jury's verdict for plaintiff should stand.

Dethmers and Kelly, JJ., dissenting.

Appeal from Wayne; Sweet (Lucien F.), J., presiding. Submitted April 10, 1964. (Calendar No. 32, Docket No. 49,972.) Decided January 5, 1965.

Case by Walter F. Kroll against Zessie R. Katz, doing business as Z. R. Katz Investment Company, for injuries sustained in fall on defective cellar stairs. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Reversed and remanded for entry of judgment on verdict.

*Charfoos & Charfoos (Samuel Charfoos* and *Donnelly W. Hadden,* of counsel), for plaintiff.

*Bernstein & Bernstein (Edwin S. Moag,* of counsel), for defendant.

Kavanagh, C. J. Plaintiff brought this action in August, 1959, to recover for injuries sustained by him on August 4, 1958. He was instructed by his employer to go to a house on West Hancock street in the city of Detroit to make plumbing repairs, which had been requested by defendant. On arrival at the vacant house, plaintiff noticed water running over the bathroom floor. While going to the basement to turn off the water, one of the wooden steps leading to the basement cracked under him. Plaintiff lost his balance and, in attempting to regain it, he lunged toward the bottom step. The bottom step was missing. He fell, twisted his ankle, and injured his back and head severely.

Plaintiff's declaration alleged that his injuries were the result of defendant's negligence in that:

"(a) Defendant failed to maintain an adequate and safe stairway for access to and from the basement.

"(b) Defendant failed to supply adequate lighting over the stairway, thus increasing the unknown hazards of the stairway.

"(c) Plaintiff was an invitee on the premises, thus defendant had a duty to discover dangerous defects and either repair them or give plaintiff adequate warning.

"(d) Defendant breached his duties to plaintiff invitee and said breach was the cause in fact and the proximate cause of plaintiff's injuries."

Defendant answered denying ownership of the premises and denying the other allegations. He denied knowledge that a step was missing. He affirmatively asserted the defense of contributory negligence.

The case was tried to a jury, which returned a verdict for plaintiff in the amount of $8,000.

Defendant made a motion for directed verdict both at the end of plaintiff's proofs and at the conclusion of the trial. The trial court reserved these motions under the Empson act.*

In his charge to the jury the trial court ruled that plaintiff was an invitee of defendant, who, as vendor of the house under a defaulted land contract during the period of redemption, was in control and possession of the premises. The trial court granted defendant's motion for judgment *non obstante veredicto*. In a written opinion the court held that plaintiff had not shown knowledge on the part of defendant as to the missing step, and that there was nothing in the record to show when this step was removed. He then cited the fact plaintiff's employer had made no mention of any missing step a day or 2 before

---

* CL 1948, § 691.691 (Stat Ann 1959 Cum Supp § 27.1461). See GCR 1963, 515.—REPORTER.

the accident when he had gone down the same stairs, considered further the testimony of defendant and a defense witness that they did not know the step was missing, and stated:

"Considering the fact that plaintiff's employer had made no mention of any missing step a day or 2 before the accident, and considering further the testimony of the defendant and his witness Mitnick, the only inferences that can be drawn therefrom lead to the conclusion that the step had not long been missing. The evidence presents no interval of time during which it can be said that the defendant had the opportunity to observe this condition and correct it."

The trial court then concluded:

"The mere existence of defects or of a dangerous condition is not enough to establish the liability of the defendant unless it is also shown that such defects or condition were of such a character or had existed for such a period of time that the jury might reasonably conclude that by the use of due care the defendant would have discovered such defects or danger and taken the necessary action to correct the defects and remove the danger. The proofs presented to the jury were completely lacking in this regard and did not permit a conclusion or finding on the part of the jury that the defendant knew, or should have known, of the conditions, to-wit: the step which broke and the missing step, that caused the plaintiff's fall and his resulting injuries."

From judgment in accordance with this opinion, plaintiff appeals.

One question is presented by plaintiff:

"Considering the evidence in the light most favorable to the plaintiff, is there any evidence of negligence to support the unanimous verdict of the jury?"

That the above question is determinative of the appeal is evident by reference to *Sparks* v. *Luplow,* 372 Mich 198, where this Court stated (p 202):

"It is a well-settled principle of law that on review of a trial court's refusal to grant a motion for a directed verdict or judgment *non obstante veredicto,* the facts are reviewed in the light most favorable to plaintiff. *Tacie* v. *White Motor Co.,* 368 Mich 521, 527. The test used is whether from the facts in the light most favorable to plaintiff, reasonable men could honestly reach a different conclusion. If the answer to this is 'yes,' the question is for the jury. *Anderson* v. *Gene Deming Motor Sales, Inc.,* 371 Mich 223."

That rule applies likewise on review of the granting of such a motion.

The favorable-to-plaintiff view of the evidence in this case reveals these facts and proper inferences: defendant admittedly descended the subject stairs shortly before the accident to inspect the basement and looked closely enough to find plumbing and electrical fixtures missing and discovered that the basement was dark; plaintiff's exhibit 2 (the photograph included herein, which was testified to by plaintiff as representative of the condition at the time of the accident, except that a thicker plank had replaced the broken second step), indicates graphically the angle of the stairs, the thinness of the treads, the absence of a handrail, and the irregularity of vertical distance between treads of the stairs, caused by the fact the bottom step was missing.

Might the jury properly have found from the condition of the stairs as shown by the photographic exhibit, and the darkness of the basement, that defendant on his visit to the basement before the accident did discover or, in the exercise of reasonable

care, then, or subsequently, should have discovered that the situation was dangerous, and, in the exercise of reasonable care, should have either remedied the danger or warned plaintiff of its existence?

In *Torma v. Montgomery Ward & Co.*, 336 Mich 468, this Court stated the applicable rule:

"May it properly be said that plaintiff failed to establish a prima facie case of liability on the part

of the defendant? As invitor the defendant owed the duty to its customers and patrons, including the plaintiff, of maintaining its premises in a reasonably safe condition and of exercising due care to prevent and to obviate the existence of a situation, known to it or that should have been known, that might result in injury. In *Blakely* v. *White Star Line,* 154 Mich 635 (19 LRA NS 772, 129 Am St Rep 496), this Court quoted with approval from Cooley on Torts, p 605, as follows:

" ' "One is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." ' " (pp 476, 477)

"The rule as to the length of time that a given condition must obtain in order to charge one, sought to be held liable for resulting damages, with constructive notice, varies with the facts and circumstances involved and with the basis for the liability claimed." (p 486)

In *Cruz* v. *City of Saginaw,* 370 Mich 476, this Court again spoke about constructive notice of hazardous property defects (p 481):

"Generally, the question whether a street defect, otherwise actionable against the municipality, 'has existed a sufficient length of time and under such circumstances that the municipality is deemed to have had notice is a question of fact, and not a question of law.' *Hendershott* v. *City of Grand Rapids,* 142 Mich 140, 143; followed in *Torma* v. *Montgomery Ward & Co.,* 336 Mich 468, 487. The opinion of witness Barnes, the size and nature of the hole in the pavement, the proximity thereof to the municipal

parking lot and city employees occasionally working there, call fairly for conclusion that the issue of prior notice of the existence of the hole was—under *Hendershott's* stated rule—one of fact and that the trial judge had a right to determine it as he did. Such conclusion finds support in *Goldsmith* v. *Cody,* 351 Mich 380, citing to the point *Siegel* v. *Detroit City Ice & Fuel Co.,* 324 Mich 205, and *Yarington* v. *Huck,* 218 Mich 100; also in *Hulett* v. *Great A. & P. Tea Co.,* 299 Mich 59."

The *Hendershott Case* quotation cited in *Cruz* v. *City of Saginaw, supra,* is immediately followed in *Hendershott* by the statement (p 143):

"The judge cannot say that, if the defect has existed for a certain time, that would of itself be deemed constructive notice."

The *Siegel Case* cited in *Cruz* contains the following statement (pp 211, 212):

"In *Yarington* v. *Huck,* 218 Mich 100, we affirmed a judgment for plaintiff who tripped and fell as she entered the door of defendant's restaurant, she claiming that she caught her foot in the hole of the runner on the floor. It was then claimed that there was no showing that a sufficient length of time had elapsed so that defendant should have known of the defect. We held that evidence of the defect was sufficient to raise a jury question as to defendant's negligence, *for the character of the defect alone would raise a question of the knowledge of defendant.* Also, see *Hulett* v. *Great A. & P. Tea Co.,* 299 Mich 59." (Emphasis supplied.)

These statements indicate constructive notice arises not only from the passage of time itself, but also from the type of condition involved, or from a combination of the two elements.

Professor Prosser made a fair statement of the rules regarding occupiers of land:

"The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. He must not only warn the visitor of dangers of which he knows, but must also inspect the premises to discover possible defects. There is no liability, however, for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not know and could not have discovered with reasonable care. The mere existence of a defect or danger is not enough to establish liability, unless it is shown to be of such a character *or* of such duration that the jury may reasonably conclude that due care would have discovered it." Prosser on Torts (2d ed), p 459. (Emphasis supplied.)

Contrary to the impression conveyed at several points in Justice KELLY's opinion, it is true, as he indicated early in his opinion, that on plaintiff's previous trip to the basement "he stopped on the third step from the bottom." This fact, together with the absence of any rule imputing his employer's knowledge, if any, to him, indicates that plaintiff had not been shown to have any knowledge, either actually or legally, of the condition of the bottom two steps previous to the incident.

The trial judge in the present case correctly charged the jury:

"Consequently, by reason of these circumstances, the defendant owed certain duties as the person in charge of—in possession of the premises to any invitee who might come upon those premises, and under these circumstances takes the duty of the defendant to use reasonable care to keep his premises in a reasonably safe condition; and the plaintiff as an invitee, a business invitee, was entitled to expect that the owner or occupant, that is the defendant in this case, would take reasonable care to know the actual conditions of the premises and

either make them safe or warn the invitee of dangerous conditions."

The jury properly could have found, on the evidence adduced and the instructions given, that defendant on his visit to the basement before the accident did discover or, in the exercise of reasonable care, then, or subsequently, should have discovered that the situation was dangerous, and, in the exercise of reasonable care, should have either remedied the danger or warned plaintiff of its existence.

The trial court erred in granting defendant's motion for judgment *non obstante veredicto.* Judgment of the trial court is reversed and the cause remanded for entry of judgment in accordance with the jury verdict. Costs to plaintiff.

BLACK, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred with KAVANAGH, C. J.

KELLY, J. (*dissenting*). The trial judge entered judgment for defendant notwithstanding the verdict of the jury because the proofs were "completely lacking * * * that the defendant knew, or should have known, of the conditions, to-wit: the step which broke and the missing step, that caused the plaintiff's fall and his resulting injuries."

It is well established that such proof was necessary for plaintiff to have a right to recover from defendant.

In *Nash* v. *Lewis,* 352 Mich 488, 492, we stated:

" 'A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them.' "

In *Goldsmith* v. *Cody*, 351 Mich 380, 389, we said:

" 'Suffice it to say that the plaintiff says he never saw them (barricades) down, but no proof is present in this record to show that the defendants or any of them were given warning of a situation where it was necessary for them to take action in order to protect themselves from the charge of negligence.

" 'The burden of proof is upon the plaintiff in that respect, and the record is void of testimony.' "

Appellant's appendix in this appeal lists only three witnesses: one for plaintiff, namely, the plaintiff, Walter F. Kroll, and two for defendant, namely, the defendant and his brother-in-law, Mr. Mitnick.

Plaintiff presented no testimony to prove that defendant knew, or ought to have known, the steps were dangerously defective, but did testify that two days before his accident he helped his employer (Mr. Sarnoff) carry a 200-pound laundry tub down these steps and that he stopped on the third step from the bottom as Sarnoff reached the basement floor with his end of the tub; that Sarnoff made no comment about anything being wrong with the steps.

Defendant testified that he had sold his property on contract and that, "In June or July, I passed by and I don't know what date I passed by the property. It was vacant. The door was opened and the back door was opened and I figured to come in to see what happened. I come in and there is no plumbing. Everything was destroyed. * * * It (the plumbing) was gone. * * * The electrical fixtures were gone"; that he called the plumbing contractor, Mr. Sarnoff, and made arrangements with him to replace "everything according to the law for the building department"; that when Sarnoff had completed his job and he paid him off, Sarnoff did not inform him that plaintiff had been hurt on his cellar steps and, in fact, he did not know that plaintiff had any

claim against him until plaintiff started his suit one year later.

Plaintiff's counsel's cross-examination of defendant discloses that the questions were only directed toward the activity of the plasterers, the painters that defendant engaged to help recondition the house, and the locks that defendant placed on the doors, but not one question was directed on cross-examination to defendant in regard to the cellar steps.

Defendant's brother-in-law testified that he was with defendant when he discovered the doors open, the plumbing and electrical equipment stolen, et cetera; that he went down into the basement and that he did not see anything wrong with the steps. Once more counsel for plaintiff on cross-examination did not ask one question in regard to the cellar steps.

In setting aside the verdict and entering judgment *non obstante veredicto* for defendant, the trial court set forth in a thorough and lengthy opinion the reasons why plaintiff had failed to prove defendant's negligence.

In regard to plaintiff's claim that defendant was negligent in not providing lights in the basement, and particularly over the steps, the court called attention to the fact that plaintiff knew as he started down the steps there were no lights in the basement; that he had a flashlight and his testimony was that he flashed the light upon the steps but did not continue to do so because he had been down the steps just two days before with his employer and from that trip he thought the steps were all right, and, so, as he descended, he flashed his light around the basement to find out where the water meter was located; that plaintiff was fully aware of the fact that the electric service was turned off and, concluding on this question, the court stated:

"In considering any negligence chargeable to the defendant by reason of the darkened condition of the stairway and basement we must, in all fairness, consider the circumstances then and there existing, and particularly the fact that the defendant was engaged in repairing the premises and making them habitable and had, in fact, employed the employer of the plaintiff to assist him in this purpose. If there was any causal connection between the lack of light in the stairway and the injuries sustained by plaintiff it arose through the negligence of the plaintiff in not using the means which he had at hand, to-wit: his flashlight, in observing the condition of the stairway, rather than any negligence on the part of the defendant."

We agree with the trial court's conclusion that the absence of electric lights in the basement did not prove defendant's negligence, and disagree with appellant's contention in his brief submitted to this Court that: "There is no evidence in the record that the defendant had any intention of providing proper lighting in the basement. There is no explanation in the record why the delay. It may have been excusable or negligent. In the absence of an explanation by the defendant the jury may well have concluded he was negligent."

Considering the claim of plaintiff that defendant was negligent for not having a handrail along side the steps, we call attention to the fact that plaintiff's accident is not based upon, nor was any proof offered of, any violation of a statutory or municipal law. No proof was offered or suggested that the steps were improperly constructed contrary to the building code. Plaintiff's claim is based upon alleged common-law negligence.

There is nothing in plaintiff's testimony to the effect that the handrail, if one were present, would have prevented him from falling. In fact, he testi-

fied that as the step cracked under him he threw his body toward the wall and grabbed onto the 2 x 4 that is clearly shown in the photograph attached to my Brother's opinion.

The trial court stated:

"As to the handrail, there is nothing in the evidence showing that a handrail was necessary, or that the failure of the defendant to have had a handrail installed presented a dangerous situation. The stairs at this point were straight and descended from a landing directly into the basement. This was a dwelling house, not a public building. It is generally known that cellar stairways in private homes frequently are not equipped with handrails."

Appellant, in his brief, states that while no testimony was offered to prove that defendant was negligent in not constructing a handrail, that the photograph is sufficient and speaks for itself, and the jury was justified in finding that, while this was an old building, the fact that others "get away with it never has been an excuse or satisfaction for this obvious negligence," and that any claim that "defendant did not have time or opportunity to change it is a burden of proof that was not carried by the defendant."

In regard to the step that cracked from plaintiff's weight and precipitated his fall, the court found that "there was no evidence produced from which it could be concluded that the defendant knew, or should have known, that the step might break, that it was cracked or out of repair. * * * There is nothing in the record to support a conclusion that the defendant knew, or should have known, that the step might break."

My Brother in his opinion states: "The jury properly could have found, on the evidence adduced and the instructions given, that defendant on his visit

to the basement before the accident did discover or, in the exercise of reasonable care, should have discovered that the situation was dangerous, and, in the exercise of reasonable care, should have either remedied the danger or warned plaintiff of its existence," and "defendant admittedly descended the subject stairs shortly before the accident to inspect the basement and looked closely enough to find plumbing and electrical fixtures missing and discovered that the basement was dark."

The record discloses that approximately 30 days before the accident defendant made a trip down into the basement, after finding the doors of his house open and the plumbing and electrical fixtures stripped, and he found nothing wrong with the steps. Plaintiff did not challenge this statement during his cross-examination of defendant.

According to the proofs, both plaintiff and defendant made one trip down the cellar steps prior to the accident: Plaintiff two days before the accident and defendant at least 30 days before the accident, and both found the steps all right.

In other words, to conclude as plaintiff-appellant would ask this Court to conclude, contrary to the trial court's conclusion, it would mean that even though defendant took a trip down the stairs before the plaintiff and his employer went down the stairs that, while plaintiff and his employer did not observe anything wrong with the stairs, defendant was guilty on his trip some 30 days previous to the accident for not having so observed.

Concerning the missing bottom step, there is nothing in the record to show when this step was removed, and from the testimony introduced, there can be only one inference, *i.e.,* that it was removed subsequent to defendant's last trip down the stairs and subsequent

to the trip that plaintiff and his employer took down the stairs two days before the accident.

The record sustains appellee that:

"There is no testimony in the record as to any defect in the step, just that it broke when plaintiff stepped on it. There is no testimony that it was cracked or that there were nails missing. There is no testimony that the step had been loose prior to plaintiff falling. There is no testimony that if the steps had been examined, it would have shown any defect requiring repairs. There is no testimony that failure to have a handrail in any way precipitated plaintiff's injuries. There is no testimony that the lack of lights caused plaintiff to fall. There is no testimony when the last step was removed or how long it had been gone. There is no testimony that any dangerous condition existed when plaintiff stepped on the stairs, and even if it could be said that there was a dangerous condition, there was no showing that the condition was brought to the attention of the defendant or existed a sufficient length of time and under circumstances so that such condition could have been discovered and known to the defendant."

The court did not err in setting aside the verdict. The judgment should be affirmed, with costs to appellee.

DETHMERS, J., concurred with KELLY, J.