# STATE OF MICHIGAN

# COURT OF APPEALS

KEN YOUNG,

      Plaintiff-Appellant,

v

WALTON OIL, INC.,

      Defendant-Appellee.

UNPUBLISHED
February 6, 2018

No. 333794
Oakland Circuit Court
LC No. 2015-145680-NO

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Ken Young slipped and fell on ice while walking toward a gas pump at Walton Oil. The circuit court summarily dismissed Young's complaint against the gas station owner, ruling that there was no evidence Walton Oil had notice of the icy condition and that the condition was open and obvious. Young created fact questions regarding both issues. Accordingly, we vacate the circuit court's order of summary disposition and remand for further proceedings.

## I. BACKGROUND

On a cold winter evening, Young stopped at Walton Oil to fill his tank. Young testified that as he exited his car and began to walk in the direction of a gas pump, he slipped and fell. The area was well-lit and entirely cleared of snow. He did not see any ice.

Yaser Al Asadi managed the gas station that evening. He testified that he inspected the area near the pumps when he arrived for work at 3:00 p.m. and saw no ice. In fact, Al Asadi claimed that he could not see any ice even after Young fell. He declared, "There's no ice outside."

Another manager, Youssef Krayem, later watched a store video that included Young's fall.[1] According to Krayem, the video showed that the parking lot "was pretty clean. There's no even [sic] ice, nothing." He speculated that possibly water had collected and frozen in a "crack

---

[1] Apparently Walton Oil did not retain a copy of the video, and no one other than Krayem has watched it.

here and there." He admitted that he was able to see a patch of ice "[l]ike a foot wide" near the pump when he personally inspected the area the next morning.[2]

Ultimately, the circuit court dismissed Young's premises liability action. The court summarized that neither Young nor Al Asadi, who had inspected the property that day, saw the ice upon which Young fell, even after the incident. There was no evidence regarding the length of time the ice had been on the ground. Accordingly, the court determined, there was no evidence that Walton Oil had notice of the dangerous condition. The court also determined that the condition was open and obvious such that Walton Oil had no duty to warn. Specifically, the court noted that the grass surrounding the gas station was snow covered and it was very cold that day. Young "could have, and should have, expected ice on the ground" under those conditions.

## II. ANALYSIS

Young now appeals the circuit court's summary disposition order. "We review a trial court's decision on a motion for summary disposition de novo." *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). Summary disposition under MCR 2.116(C)(10) is proper when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008). "In reviewing a motion under MCR 2.116(C)(10), [we] consider[] the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). See also MCR 2.116(G)(5).

"To establish a prima facie case of negligence, a plaintiff must prove that '(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages.' " *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012), quoting *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012). With regard to invitees, a premises owner has a "legal duty . . . to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land that the landowner knows or should know the invitees will not discover, realize, or protect themselves against." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995) (quotation marks and citation omitted).

---

[2] When describing that ice patch, Krayem contradicted his earlier testimony, asserting that he was able to see the ice on the video.

However, "a premises possessor is not required to protect an invitee from open and obvious dangers." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001). An objective test applies for determining whether a dangerous condition is open and obvious: would an average person of ordinary intelligence discover the danger and the risk it presents on casual inspection? *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 474; 499 NW2d 379 (1993). Accordingly, for Young to prove that the circuit court erred in granting Walton Oil's motion for summary disposition, he must "come forth with sufficient evidence to create a genuine issue of material fact that an ordinary user upon casual inspection could not have discovered the existence" of the danger. *Id*. at 475. Given that neither Young nor Al Asadi could see the ice, we must assume that it was not visible on casual inspection.

Logically, ice that is invisible or nearly so is not "open and obvious" as a matter of law; one would not expect an average person to be able to discern a nearly invisible thing on casual inspection. We acknowledge that in a brief order, the Supreme Court suggested that "wintery conditions by their nature" should alert an average person "to discover the danger upon casual inspection." *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934, 935; 782 NW2d 201 (2010). But in a later opinion, *Hoffner v Lanctoe*, 492 Mich 450, 463-464; 821 NW2d 88 (2012), quoting *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 261; 235 NW2d 732 (1975), the Court emphasized that it has consistently " 'reject[ed] the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability' under any circumstances."

In other words, the presence of snow and cold temperatures does not create an irrefutable presumption of accompanying ice. While "wintry conditions, like any other condition on the premises, may be deemed open and obvious," the central question remains "whether the individual circumstances, including the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger." *Hoffner*, 486 Mich at 464. Therefore, the Supreme Court elucidated, "a premises owner has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation" by taking "reasonable measures" within a "reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee." *Id*. (quotation marks and citation omitted).

We interpret this language as counseling courts to apply an individualized analysis in ice cases rather than rubber-stamping a "wintry conditions" rule deeming every patch of ice on property opened to invitees open and obvious as a matter of law. The facts of this case demonstrate that ice may not be visible on casual inspection despite a surrounding winter landscape.

It snowed only lightly and briefly on the day of Young's fall, and there was no accumulation. The parking lot had been cleared of snow that had fallen earlier in the week. Young testified that he did not see the ice. The representative of the gas station who was actually present that night did not see any ice. The witnesses' inability to discern the presence of the ice means that a jury should decide whether an average person of ordinary intelligence would have discovered it on casual inspection, bearing in mind that it was February in Michigan.

A fact question also exists regarding whether Walton Oil had constructive knowledge of the ice's presence. There is no record evidence that Walton Oil had *actual* notice of the ice. But

the constructive notice doctrine contemplates liability if a defendant knew or *should have known* of a dangerous condition on the premises.

An invitee such as Young is "entitled to expect" that a premises possessor will "take reasonable care to know the actual conditions of the premises and either make them safe or warn the invitee of dangerous conditions." *Kroll v Katz*, 374 Mich 364, 373-374; 132 NW2d 27 (1965) (quotation marks omitted). This Court has recognized that an occupier's knowledge of the "actual conditions" of the premises demands adequate inspection to discover latent dangers:

> "The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. But the obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, *but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use.*" [*Conerly v Liptzen*, 41 Mich App 238, 241-242; 199 NW2d 833 (1972), quoting Prosser, Torts (3d ed), § 61, pp 402-403, (emphasis added).]

The employees of Walton Oil knew that ice sometimes formed on the surface of the gas station. They kept salt at the ready for deployment in preventing slippery patches. One employee specifically acknowledged that ice sometimes develops in pavement "cracks." These realities of a gas station in winter would reasonably support a need for regular inspections of the premises. Further, a Walton Oil employee testified that an inspection occurred several hours before Young's fall.

Viewed in the light most favorable to Young, the ice on which he fell was present at 3:00 p.m. when Al Asadi claims to have inspected the premises. We base this conclusion on the fact that nothing changed, weather-wise, throughout that afternoon and evening. The temperature remained the same: well below freezing. There was no snow. No evidence supports that something happened that would have suddenly caused a patch of ice to form. The reasonable inference is that if Al Asadi actually inspected the premises at 3:00 p.m., he did so negligently. And although the ice may have been difficult to see, Al Asadi's duty included looking for hazards, not merely casually inspecting the premises. *Price v Kroger Co of Mich*, 284 Mich App 496, 500; 773 NW2d 739 (2009). A jury could reasonably find that Al Asadi should have seen the ice, especially since Krayem found it the next day when he inspected the premises.

"Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Banks v Exxon Mobil Corp*, 477 Mich 983, 984; 725 NW2d 455 (2007), citing *Kroll*, 374 Mich at 371. Questions of fact abound in this case both as to notice and whether the ice was open and obvious.

Accordingly, we vacate the grant of summary disposition in Walton Oil's favor and remand for further proceedings. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher